**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NUMBER: _____**

WHITNEY BRADLEY, individually and as
Personal Representative of the Estate of
WILLIAM BRADLEY, deceased,

      Plaintiff,

vs.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## COMPLAINT FOR MEDICAL MALPRACTICE
## UNDER THE FEDERAL TORT CLAIMS ACT

Plaintiff, WHITNEY BRADLEY, as Personal Representative of the Estate of WILLIAM BRADLEY, deceased, hereby files this Complaint for Medical Malpractice Under the Federal Tort Claims Act against Defendant, UNITED STATES OF AMERICA, and states as follows:

### PARTIES. JURISDICTION, AND VENUE

1.    This is an action against Defendant, United States of America, under the Federal Tort Claims Act, (28 U.S.C. §1346(b)), for medical negligence in connection with substandard care and treatment provided to WILLIAM BRADLEY, deceased, by MIAMI VETERANS AFFAIRS HEALTHCARE SYSTEM (hereinafter "MIAMI VA"). As outlined below, MIAMI VA falls under the Federal Tort Claims Act.

2.    The decedent, WILLIAM BRADLEY, was a Florida resident who honorably served in the United States Navy for 22 years. He retired as a Navy Chief. He continued his service to the United States in his work with U.S. Customs Service under the Treasury

Department and proceeded to work for U.S. Customs and Border Protection under the Department of Homeland Security following the reorganization of the agency in the wake of the September 11, 2001 terrorist attacks.   As a military veteran, WILLIAM BRADLEY received his medical care and treatment from the Department of Veterans Affairs.

3.     This action is within the jurisdiction of this Court and all jurisdictional requirements have been satisfied.

4.     Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and Florida Statute Chapter 766.

5.     This civil action has been timely filed. Plaintiff timely served notices of the claim upon the United States Department of Justice within two years of the incident forming the basis of this suit.

6.     Plaintiff files this Complaint pursuant to 28 U.S.C. §2401(b) since they did not receive an official denial from the United States Department of Justice after waiting more than six months after serving notices upon the United States Department of Justice.

7.     Venue in the Southern District of Florida is proper under 28 U.S.C. §1402(b) in that the acts or omissions forming the basis of this claim occurred in Miami-Dade County, Florida, in the Southern District of Florida.

8.     At all times material, WHITNEY BRADLEY has been appointed the Personal Representative of THE ESTATE OF WILLIAM BRADLEY, deceased.

9.     At all times material, WHITNEY BRADLEY (DOB: 6/5/1993) is the daughter of WILLIAM BRADLEY and a statutory surviving minor child under Florida's Wrongful Death

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

Act (Fla Stat. §768.16 – 768.26).

10.     At all times material, DALYS BRADLEY (DOB: 9/9/1965) is the widow of WILLIAM BRADLEY and is a statutory surviving spouse under Florida's Wrongful Death (Fla Stat. §768.16 – 768.26).

11.     At all times material, the United States of America conducted business as the MIAMI VETERANS AFFAIRS HEALTHCARE SYSTEM (MIAMI VA) and owned and operated a hospital in Miami-Dade County known as the Miami VA Hospital.

12.     At all pertinent times, the Defendant acted through its employees, agents, and apparent agents of physicians, staff, nurses and technicians including, but not limited to, ROBERT BOWLES, M.D., MONISHA BANERJEE, M.D., DAYLEN BURGOS, M.D., KEVIN CHU, M.D., VINCENT DEGANNERO, M.D., MARK GREABER, D.P.M., LISA IBATA, A.R.N.P., DEVORAH, KAHN, M.D., NEIL OLARTE, D.O., ABRAHAM KASLOW, M.D., ALEX LALL, M.D., JEFFREY MASAI, M.D., and JORGE URBANDT, M.D., were responsible for examining and treating the decedent, WILLIAM BRADLEY, when he presented as a patient to the MIAMI VA for care and treatment.

13.     Based upon the actions and conduct of the MIAMI VA and said health care providers, the decedent, WILLIAM BRADLEY, believed said health care providers to be employees or agents of the Defendant.  WILLIAM BRADLEY allowed or agreed to treatment by said healthcare providers, based upon their conduct and representation that they were employees or employees of the MIAMI VA.  Decedent WILLIAM BRADLEY's reliance on the conduct and representations of said healthcare providers was to his detriment.  WILLIAM

BRADLEY died as a direct and proximate result of the negligent acts and omissions of said healthcare providers as set forth in detail below.

14.    UNITED STATES OF AMERICA is liable for the negligent acts and omissions of the health care providers identified in paragraph 12 that were committed in the course and scope of their employment, agency and apparent agency

15.    At all times material hereto, ROBERT BOWLES, M.D. (Attending General Surgeon), MONISHA N. BANERJEE, M.D. (General Surgery Resident), DAYLEN BURGOS, M.D. (General Surgery Resident), KEVIN CHU, M.D. (General Surgery Resident), VINCENT A. DEGANNERO, M.D. (Chief of General Surgery, Attending General Surgeon), ABRAHAM M. KASLOW, M.D. (General Surgery Resident), ALEX P. LALL, M.D. (General Surgery Resident), and JORGE E. URBANDT, M.D. (Attending General Surgeon), were physicians practicing in Miami-Dade County, Florida, who held themselves out to the public, including WILLIAM BRADLEY, as General Surgeons, possessing the same skill and expertise as other reasonably prudent General Surgeons.

16.    At all times material hereto, Defendants, DEVORAH C. KAHN, M.D. (Attending Internal Medicine Physician) and NEIL OLARTE, D.O. (Internal Medicine Resident) were physicians practicing in Miami-Dade County, Florida, who held themselves out to the public, including WILLIAM BRADLEY, as internal medicine hospitalists, possessing the same skill and expertise as other reasonably qualified and prudent internal medicine hospitalists.

17.    At all times material hereto, Defendant, JEFFREY N. MASAI, M.D., was a radiologist practicing in Miami-Dade County, Florida, who held himself out to the public,

4

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

including WILLIAM BRADLEY, as a radiologist, possessing the same skill and expertise as other reasonably qualified and prudent radiologists.

18.     At all times material hereto, Defendant, LISA IBATA, ARNP, was an advanced registered nurse practitioner in Miami-Dade County, Florida, who held herself out to the public, including WILLIAM BRADLEY, as possessing the same skills and expertise as any other reasonably qualified advanced registered nurse practitioner.

19.     At all times material hereto, Defendant, MARK GRAEBER, D.P.M. (General Surgery Resident), was a podiatrist practicing in Miami-Dade County, Florida, who held himself out to the public, including WILLIAM BRADLEY, as possessing the same skills and expertise in the field as other reasonably qualified and prudent podiatrists.

20.     At all times material hereto, UNITED STATES OF AMERICA, through the MIAMI VA HEALTHCARE SYSTEM (MIAMI VA) and its respective employees, owed a duty to WILLIAM BRADLEY to perform medical and technical tasks in conformity with the prevailing professional standard of care for similar health care providers in light of all the relevant surrounding circumstances.

21.     The undersigned counsel hereby certifies that a reasonable investigation as permitted by the circumstances has been conducted and forms the basis for a good faith belief that sufficient grounds exist to bring this malpractice action against Defendant.

## FACTS GIVING RISE TO CLAIM

22.     WILLIAM BRADLEY first sought evaluation and treatment at the MIAMI VA Emergency Department on June 29, 2016, with complaints of severe abdominal pain and an

associated acute constellation of symptoms.  He was admitted for eight days (6/29/16 - 7/6/16) during which the clinical findings were consistent with acute cholecystitis (acute inflammation of the gallbladder).  He underwent an invasive Endoscopic Retrograde Cholangiopancreatography (ERCP), sphincterotomy (cutting of the biliary sphincter), and placement of a stent into the common bile duct.  However, his discharge neglected to include definitive treatment measures consistent with his symptoms and clinical findings.  Instead, the VA medical providers negligently decided to postpone the surgical removal of the gallbladder and planned to do the procedure on an elective basis a month later.

23.     Upon information and belief, the attending general surgeon, BOWLES, Attending Chief of Genera Surgery, DEGENNARO, Resident General Surgeon, BANERJEE, Resident General Surgeon CHU, and Resident General Surgeon BURGOS, deviated from the prevailing standard of care in their failure to appropriately evaluate, monitor, and treat, WILLIAM BRADLEY, during his admittance from June 29, 2016 to July 6, 2016.  If said physicians had met the standard of care, they would have concluded that WILLIAM BRADLEY was suffering from acute cholecystitis (acute inflammation of the gallbladder) and taken WILLIAM BRADLEY for the prompt removal of his acute gallbladder.

24.     Four days later, on July 10, 2016 at 8:11 a.m., WILLIAM BRADLEY again returned to the MIAMI VA Emergency Department with the ongoing severe abdominal pain and other accompanying symptoms similar to his initial presentation on June 29, 2016. Again, his clinical findings were consistent with acute cholecystitis.  He was evaluated and then discharged at 1:20 p.m. that same day pending, *"...our plan for definitive elective surgical*

*treatment as planned."* Once again, the MIAMI VA Hospital healthcare providers endorsed elective treatment measures but neglected to appropriately address and treat WILLIAM BRADLEY'S acute gallbladder disease process. If said physicians had met the standard of care, they would have concluded that WILLIAM BRADLEY was suffering from acute cholecystitis (acute inflammation of the gallbladder) and taken WILLIAM BRADLEY for the prompt removal of his acutely infected gallbladder.

25.     WILLIAM BRADLEY again returned to the MIAMI VA Emergency Department for the third time on July 10, 2016 at 7:50 p.m., which was six hours after the VA discharged him earlier in the day.  Again, he presented with severe abdominal pain and other symptoms that were similar to his presentations to the MIAMI VA on the two prior occasions. Again, his clinical findings were consistent with acute cholecystitis.  The MIAMI VA discharged WILLIAM BRADLEY on July 14, 2016, and with instructions to follow up with, *"...general surgery for elective laparoscopic cholecystectomy"* (surgical removal of his gallbladder).  Despite WILLIAM BRADLEY's persistent signs and symptoms of acute cholecystitis, the MIAMI VA healthcare providers negligently continued to recommend elective treatment measures instead of the prompt surgical intervention as required by the standard of care. If said physicians had met the standard of care, they would have concluded that WILLIAM BRADLEY was suffering from acute cholecystitis (acute inflammation of the gallbladder) and taken WILLIAM BRADLEY for the prompt removal of his acute gallbladder.

26.     Upon information and belief, Resident Internal Medicine/Hospitalist, KAHN, Resident Internal Medicine/Hospitalist, OLARTE and Resident General Surgeon, BURGOS,

failed to appropriately evaluate, monitor, and treat WILLIAM BRADLEY during his visits and admittance from July 10, 2016 to July 14, 16.  If said health care providers had met the standard of care, they would have concluded that WILLIAM BRADLEY was suffering from acute cholecystitis (acute inflammation of the gallbladder) and taken WILLIAM BRADLEY for the prompt removal of his acute gallbladder.

27.     On July 28, 2016, at approximately 8:02 a.m., WILLIAM BRADLEY returned to the MIAMI VA Emergency Department for the fourth time.  He presented with the same severe abdominal pain and symptoms that were similar to his three previous presentations at the MIAMI VA, and he was admitted to the hospital.  X-rays of the abdomen taken 1:01 p.m. on July 31, 2016 (eighty-three hours following admission), showed findings that were consistent with a perforated viscus, a known life-threatening medical emergency. Finally, a CT scan of the abdomen was performed. The x-ray findings were confirmed with additional diagnostic appraisals indicating an abscessed/perforated gallbladder and a large fluid collection behind the liver. An emergent laparoscopic cholecystectomy was undertaken whereupon the perforated gangrenous gallbladder and gallstones were removed, and a percutaneous drain was placed to remove the significant fluid collection behind the liver.  Mr. Bradley was discharged on August 2, 2016 with a post-operative visit scheduled for August 10, 2016 with the MIAMI VA General Surgery Clinic providers.  If said healthcare providers had met the standard of care, they would have concluded that WILLIAM BRADLEY was suffering from acute cholecystitis (acute inflammation of the gallbladder) and taken WILLIAM BRADLEY for the prompt removal of his acute gallbladder.

28.     WILLIAM BRADLEY returned to the MIAMI VA General Surgery Clinic on August 10, 2016 for a scheduled post-operative follow up with severe abdominal pain and other sentinel symptoms associated with early to moderate sepsis.   Although WILLIAM BRADLEY'S presentation included both his subjective report and objective findings consistent with early to moderate sepsis, the MIAMI VA healthcare providers failed to recognize and implement the nationally recognized gold standard sepsis protocols as required by the standard of care.   Consequently, the MIAMI VA Hospital healthcare providers missed the essential clinical window where effective treatment could and should have been initiated as required by the standard of care.   If said healthcare providers had met the standard of care, gold standard sepsis protocols would have promptly been initiated.

29.     An abdominal ultrasound was ordered and done on August 10, 2016 at 10:21 a.m. by the clinic nurse practitioner IBATA as a diagnostic adjunct to facilitate removal of the bile duct stent scheduled for August 30, 2016.   The radiologist MASAI indicated his acknowledgement of WILLIAM BRADLEY'S recent history of gallbladder removal on July 31, 2016.  His finding of a 6 x 5 x 7 cm fluid collection in the gallbladder fossa ten days post-cholecystectomy, the: *"...probable gallbladder fossa abscess"*, confirmed a life-threatening clinical scenario.  However, radiologist MASAI failed to report this critical information to to the ordering provider or any member of the general surgery team, which was a significant deviation from the standard of care.   The radiologist's failure to report an intra-abdominal abscess prevented WILLIAM BRADLEY from receiving gold standard sepsis treatment protocols within the efficacious treatment window.

9

30.     WILLIAM BRADLEY returned to the MIAMI VA Hospital Emergency Department the following day (August 11, 2016 at 10:15 a.m.) in full cardiopulmonary arrest and fulminant septic shock due to the abdominal abscess process that was left untreated by the MIAMI VA Hospital healthcare providers. WILLIAM BRADLEY'S spontaneous circulation was restored, but he remained hemodynamically unstable and in respiratory failure with deadly blood chemistry indices and Disseminating Intravascular Coagulation, (DIC) with Multi-Organ Failure Syndrome (MODS). Attempts to save WILLIAM BRADLEY failed. Due to the substandard medical care by MIAMI VA Hospital, WILLIAM BRADLEY died a protracted and agonizing death in the hospital on February 13, 2017.

31.     At all times material hereto, Defendant, UNITED STATES OF AMERICA, by and through, MIAMI VETERANS AFFAIRS HEALTHCARE SYSTEM, and its employees, agents, and apparent agents, including but not limited to persons named in Paragraph 12 of this complaint, had a duty to provide medical care to WILLIAM BRADLEY in accordance with the accepted prevailing standard of care.

## MEDICAL MALPRACTICE OF ROBERT BOWLES, M.D.

32.     Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33.     Beginning on or about June 29, 2016, ROBERT BOWLES, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

34.     Notwithstanding this duty, ROBERT BOWLES, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a.  Failure to provide clinically justified treatment measures consistent with the presentation and findings.

    b.  Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

    c.  Persistent endorsement on June 29, 2016 and July 10, 2016 of a *"wait and watch"* plan of care in the setting of an acute evolving gallbladder disease scenario.

    d.  Delay in implementation of definitive treatment on June 29, 2016, July 10, 2016 and July 28, 2016 resulting in gangrenous rupture of the gallbladder.

    e.  Negligent supervision of General Surgery Residents throughout the course of inpatient care.

    f.  Persistent endorsement of a plan of care which failed to ensure definitive treatment measures consistent with the clinical presentation and findings.

    g.  Lack of timely follow-up of abnormal diagnostic imaging test results on August 10, 2016 at a critical clinical juncture resulted in a preventable sentinel event:

        i.  Infectious progression to fulminant septic shock.

        ii.  Cardio-pulmonary arrest.

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

      iii.  182-day inpatient hospital course,

      iv.  Protracted course of life-threatening illnesses,

      v.  Death.

### MEDICAL MALPRACTICE OF MONISHA BANERJEE, M.D.

35.      Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

36.      Beginning on or about June 29, 2016, MONISHA BANERJEE, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

37.      Notwithstanding this duty, MONISHA BANERJEE, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

      a.  Failure to provide appropriate supervision to General Surgery Resident Daylen Burgos, M.D.

      b.  Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

      c.  Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

      d.  Endorsement of care which failed to ensure definitive treatment measures consistent with the clinical presentation and findings would be provided.

    e.   Endorsement of a plan of care that delayed definitive treatment measures resulting in evolution of the infectious process and gangrenous rupture of the gallbladder, resulting in protracted acute life-threatening illnesses and 182 inpatient hospital days, and death.

### MEDICAL MALPRACTICE OF DAYLEN BURGOS, M.D.

38.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

39.    Beginning on or about June 29, 2016, and continuing on or about July 10, 2016, DAYLEN BURGOS, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

40.    Notwithstanding this duty, DAYLEN BURGOS, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a.   Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

    b.   Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

    c.   Delay in providing definitive treatment resulting in evolution of an infectious process, gangrenous rupture of the gallbladder, 182 inpatient hospital days, and death.

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

## MEDICAL MALPRACTICE OF KEVIN CHU, M.D.

41.     Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

42.     Beginning on or about July 1, 2016, and continuing on or about July 10, 2016, KEVIN CHU, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

43.     Notwithstanding this duty, KEVIN CHU, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

   a.   Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

   b.   Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

   c.   Authorizing discharge of Mr. Bradley from the hospital on July 6, 2016 despite clinical indications of his persistent acute infection of the gallbladder.

   d.   Endorsement of delay to definitive treatment resulting in evolution of infectious process, gangrenous rupture of the gallbladder, 182 inpatient hospital days and death.

14

## MEDICAL MALPRACTICE OF VINCENT DEGANNERO, M.D.

44.     Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

45.     Beginning on or about June 29, 2016, and continuing on or about July 10, 2016, VINCENT DEGANNERO, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

46.     Notwithstanding this duty, VINCENT DEGANNERO, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

a.  Failure to provide appropriate and timely treatment interventions for a readily treatable acute gallbladder illness resulting in death.

b.  Negligent supervision of Miami VA Hospital General Surgery Residents and Attending General Surgeons throughout the course of Mr. Bradley's inpatient care.

c.  Persistent endorsement of a plan of care which failed to ensure implementation of definitive treatment measures consistent with the clinical presentation and findings would be provided.

d.  Endorsement of the *"wait and watch"* plan of care which resulted in evolution of an infectious process, gangrenous rupture of the gallbladder,

182 inpatient hospital days associated with significant protracted life-threatening illnesses, and death.

e. Lack of timely follow-up of abnormal diagnostic imaging test results at a critical clinical juncture resulted in a sentinel event:

   i. Infectious progression to fulminant septic shock.

   ii. Cardio-pulmonary arrest.

   iii. 182-day inpatient hospital course,

   iv. Protracted course of life-threatening illnesses,

   v. Death.

## MEDICAL MALPRACTICE OF MARK GRAEBER, D.P.M.

47.     Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

48.     Beginning on or about August 10, 2016, MARK GRAEBER, D.P.M., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

49.     Notwithstanding this duty, MARK GRAEBER, D.P.M., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

   a. Failure to recognize and promptly initiate early goal-directed therapy gold standard treatment protocols for sepsis, a life-threatening inflammatory

16

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

disorder.

b.  Although Mr. Bradley met the criterion for Systemic Inflammatory Response Syndrome on presentation both by subjective report and objective findings MARK GRAEBER, D.P.M:

c.  Authorized Mr. Bradley's discharge from the General Surgery Clinic.

d.  Failed to confer with Attending General Surgeon JORGE E. URBANDT, M.D., prior to the discharge from the clinic.

e.  Failure to review the resulted abdominal ultrasound undertaken on August 10, 2016 and provide the emergent care necessitated due to a 6 x 5 x 7-centimeter fluid collection revealed in the posterior gallbladder fossa.

f.  The lack of timely follow-up of abnormal diagnostic imaging test results at this critical clinical juncture resulted in a sentinel event:

    i.  Unheeded progression to fulminant septic shock.

    ii.  Cardio-pulmonary arrest.

    iii.  182-day inpatient hospital course,

    iv.  Protracted course of life-threatening illnesses.

    v.  Death.

### MEDICAL MALPRACTICE OF LISA IBATA, A.R.N.P.

50.  Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

51.　　Beginning on or about August 10, 2016, LISA IBATA, A.R.N.P., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for a nurse practitioner and/or similar health care providers in light of all the relevant circumstances.

52.　　Notwithstanding this duty, LISA IBATA, A.R.N.P., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a. Failure to recognize and provide prompt treatment related to signs and symptoms of an acute post-operative sepsis presentation in an outpatient setting.

    b. Authorizing discharge of Mr. Bradley from the General Surgery Clinic despite objective indications of acute post-operative sepsis sequelae.

    c. Failure to involve the General Surgery Attending in the clinical evaluations, diagnoses and plan of care.

    d. Failure to review, ensure Attending General Surgeon would promptly review and/or ensure emergent care would be provided in association with the abdominal ultrasound she ordered on August 10, 2016 which indicated a 6 x 5 x 7-centimeter collection in the posterior gallbladder fossa.

    e. Lack of timely follow-up of abnormal diagnostic imaging test results at a critical clinical juncture resulted in a sentinel event:

        i. Infectious progression to fulminant septic shock.

    ii.   Cardio-pulmonary arrest.

    iii.   182-day inpatient hospital course,

    iv.   Protracted course of life-threatening illnesses,

    v.   Death.

## MEDICAL MALPRACTICE OF DEVORAH KAHN, M.D.

53.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

54.    Beginning on or about July 11, 2016, and continuing on or about July 14, 2016, DEVORAH KAHN, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

55.    Notwithstanding this duty, DEVORAH KAHN, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a.   Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

    b.   Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

    c.   Endorsing a delay to definitive treatment resulting in gangrenous rupture of the gallbladder, 182-day inpatient hospital course, and significant protracted life-threatening illnesses resulting in death.

    d.  Negligent supervision of First Year Internal Medicine Resident NEIL OLARTE, M.D., on July 14, 2016.

    e.  Endorsement of First Year Resident's discharge of Mr. Bradley on July 14, 2016 from the hospital resulting in gangrenous rupture of the gallbladder, and 182-day inpatient hospital course due to necessitated treatments associated with significant protracted life-threatening illnesses resulting in death.

## MEDICAL MALPRACTICE OF NEIL OLARTE, M.D.

56.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

57.    Beginning on or about July 11, 2016, and continuing on or about July 14, 2016, NEIL OLARTE, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

58.    Notwithstanding this duty, NEIL OLARTE, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a.  Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

    b.  Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

20

    c. Endorsing a delay to definitive treatment resulting in gangrenous rupture of the gallbladder, 182-day inpatient hospital course, and significant protracted life-threatening illnesses resulting in death.

    d. Discharging Mr. Bradley on July 14, 2016 from the hospital resulting in gangrenous rupture of the gallbladder, and 182-day inpatient hospital course due to necessitated treatments associated with significant protracted life-threatening illnesses resulting in death.

## MEDICAL MALPRACTICE OF ABRAHAM KASLOW, M.D.

59.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

60.    Beginning on or about July 28, 2016, ABRAHAM KASLOW, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

61.    Notwithstanding this duty, ABRAHAM KASLOW, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    a. Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

    b. Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

21

    c.   Failure to correlate Mr. Bradley's clinical presentation to abdominal ultrasound findings.

    d.   Failure to order an abdominal CT scan to clarify radiologic findings resulting in a 79-hour delay to surgical intervention.

    e.   Failure to accurately and timely evaluate, diagnose, and definitively treat an acute infection of the gallbladder resulting in a life threatening intra-abdominal processes:

        i.   Gangrenous rupture of the gallbladder,

        ii.   182-day inpatient hospital course,

        iii.   Protracted course of life-threatening illnesses, and

        iv.   Death.

## MEDICAL MALPRACTICE OF ALEX LALL, M.D.

62.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

63.    Beginning on or about July 28, 2016, and continuing on or about July 29, 2016, July 30, 2016, and July 31, 2016 ALEX LALL, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

64.    Notwithstanding this duty, ALEX LALL, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

a.  Failure to provide appropriate and timely care for a readily treatable acute gallbladder illness resulting in death.

b.  Failure to provide definitive treatment measures consistent with the clinical presentation and findings.

c.  Failure to correlate Mr. Bradley's clinical presentation to abdominal ultrasound findings.

d.  Failure to order abdominal CT scan to identify pathologic findings resulting in a 79-hour delay to definitive surgical intervention.

e.  Failure to accurately and timely evaluate, diagnose, and definitively treat an acute infection of the gallbladder resulting in progression of life threatening intra-abdominal processes:

i.  Gangrenous rupture of the gallbladder,

ii.  182-day inpatient hospital course,

iii.  Protracted course of life-threatening illnesses, and

iv.  Death.

## MEDICAL MALPRACTICE OF JEFFREY MASAI, M.D.

65.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

66.    Beginning on or about August 10, 2016, JEFFREY MASAI, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with the prevailing professional standards of care for physicians and/or similar health care providers

in light of all the relevant circumstances.

67.     Notwithstanding this duty, JEFFREY MASAI, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

    *a.* Failure to personally contact Attending Surgeon/Ordering Provider regarding critical abdominal ultrasound findings he documented as: *"significant abnormality"* a 6 x 5 x 7-centimeter fluid collection in the posterior gallbladder fossa despite his documented clinical appraisal that *"attention needed"*;

    b. Lack of timely follow-up of abnormal diagnostic imaging test results at a critical clinical juncture resulted in a preventable sentinel event:

        i.  Infectious progression to fulminant septic shock.

        ii. Cardio-pulmonary arrest.

        iii. 182-day inpatient hospital course,

        iv. Protracted course of life-threatening illnesses, and

        v.  Death.

## MEDICAL MALPRACTICE OF JORGE URBANDT, M.D.

68.     Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

69.     Beginning on or about June 29, 2016, JORGE URBANDT, M.D., owed a duty to WILLIAM BRADLEY to provide appropriate medical care and treatment in accordance with

*WHITNEY BRADLEY, individually and as Personal Representative of the Estate of WILLIAM BRADLEY, deceased vs. UNITED STATES OF AMERICA*
*Complaint for Medical Malpractice Under the Federal Tort Claims Act*

the prevailing professional standards of care for physicians and/or similar health care providers in light of all the relevant circumstances.

70.    Notwithstanding this duty, JORGE URBANDT, M.D., did or failed to do one or more of the following acts, any or all of which were departures from the prevailing standard of care:

      a.  Failure to provide appropriate and timely care interventions for a readily treatable acute gallbladder illness resulting in death.

      b.  Negligent supervision of General Surgery Residents throughout the course of Mr. Bradley's inpatient care.

      c.  Persistent endorsement of a plan of care which failed to ensure definitive treatment measures consistent with the clinical presentation and findings would be provided.

      d.  Delay in implementation of definitive treatment on June 29, 2016, July 10, 2016 and July 28, 2016 resulting in gangrenous rupture of the gallbladder.

      e.  Endorsement of the wait and watch plan of care, which resulted in gangrenous rupture of the gallbladder, 182 inpatient hospital days associated with significant protracted life-threatening illnesses, and death.

      f.  Lack of timely follow-up of abnormal diagnostic imaging test results at a critical clinical juncture on August 10, 2016 which resulted in a preventable sentinel event:

         i.  Infectious progression to fulminant septic shock.

25

    ii.   Cardio-pulmonary arrest.

    iii.   182-day inpatient hospital course,

    iv.   Protracted course of life-threatening illnesses,

    v.   Death.

## DAMAGES

71.    Plaintiff hereby incorporates by reference and realleges the allegations set forth in paragraphs 1 through 31, 33, 34, 36, 37, 39, 40, 42, 43, 45, 46, 48, 49, 51, 52, 54, 55, 57, 58, 60, 61, 63, 64, 66, 67, 69, and 70, including all subparagraphs, as if fully set forth herein.

72.    As a direct and proximate result of the negligence described herein, WILLIAM BRADLEY wrongfully died on February 13, 2017.

73.    Plaintiff demands all damages recoverable under Fla. Stat. §768.21 of the Wrongful Death Act for THE ESTATE OF WILLIAM BRADLEY, deceased, his surviving spouse, DALYS BRADLEY, and his surviving statutory minor child, WHITNEY BRADLEY.

74.    Plaintiff demands judgment for all damages suffered by the Decedent's Estate to include:

    a.   Medical and funeral expenses which have been incurred due to the decedent's death;

    b.   Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest.

    c.   Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to

present money value.

    d.  Medical or funeral expenses due to the decedent's injury or death that have become a charge against the estate or that were paid by or on behalf of decedent,

75.    Plaintiff demands judgment for all damages suffered by DALYS BRADLEY, surviving spouse, to include:

    a.  The value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value.

    b.  The loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

    c.  Medical or funeral expenses due to the decedent's injury or death.

76.    Plaintiff demands judgment for all damages suffered by WHITNEY BRADLEY, surviving statutory minor child, to include:

    a.  The value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value.

    b.  Lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.

    c.  Medical or funeral expenses due to the decedent's injury or death.

WHEREFORE, the Plaintiff, WHITNEY BRADLEY, as Personal Representative of THE ESTATE OF WILLIAM BRADLEY, deceased, and surviving statutory child demands judgment for $9,000,000.00 against the Defendant, UNITED STATES OF AMERICA, for all damages recoverable under the laws of the State of Florida for damages and further demands trial on all issues so triable.

Respectfully Submitted,

Searcy Denney Scarola Barnhart & Shipley, P.A.
Attorneys for Plaintiff
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300/Fax:  (561) 383-9503

By:/s/ Edward V. Ricci_____
Edward V. Ricci
evr@searcylaw.com;  _ricciteam@searcylaw.com
Florida Bar No. 39079